

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES O'NEIL,<br><br>Defendant. | Case No. 1:20-CR-00010-LO |

CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

**GENERAL ALLEGATIONS**

At all times material to this Information:

1. The defendant, CHARLES O'NEIL, was Vice President of Strategic Campaign Group, Inc., a political consulting company located in Arlington, Virginia.

2. Kelley Rogers was President of Strategic Campaign Group, Inc.

3. Scott B. Mackenzie, a resident of Arlington, Virginia, was a business associate of O'NEIL and Rogers. Documents submitted to the Federal Election Commission ("FEC") identify Mackenzie as the treasurer for approximately fifty-two (52) separate Political Action Committees.

4. Candidate 1 was a candidate for a seat in the United States Congress in the year 2015. Committee 1 was the official federal campaign committee formed to receive campaign contributions for the election of Candidate 1. Committee 1 was located in Greenwood, Indiana.

5. Person A was the vice president and general counsel of Company A, a gaming corporation formed in Delaware and based in Indianapolis, IN.

1

6. The Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, Sections 30101, *et seq.* ("Election Act"), limited financial influence in the election of candidates for federal office, including for the United States Congress, and provided for public disclosure of the financing of federal election campaigns, as follows:

    a. The Election Act limited the amount and source of money that may be contributed to a federal candidate or that candidate's authorized campaign committee.

    b. The Election Act expressly states that contributions made through an intermediary are treated as contributions from the original payor.

7. The FEC was an agency and department of the United States with jurisdiction to enforce the limits and prohibitions of the Election Act, and to compile and publicly report accurate information about the source and amounts of contributions.

8. Pursuant to the Election Act, the FEC required campaign committees, including Committee 1, to file periodic reports of receipts and disbursements identifying, among other things, each person who made a contribution to such committee during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within the calendar year, together with the date and the amount of any such contribution. In preparing these reports, federal candidates and political committees relied on the information provided by the donor, including the individual's name, address, and occupation. These periodic reports, which were filed with the FEC and made publicly available, were intended to provide citizens with a transparent record of contributions to candidates for federal office.

9. The Election Act prohibited any corporation from making a contribution in connection with any congressional election.

10. In 2015, the Election Act limited campaign contributions from any individual to any one candidate to $2,700 per each election.

## COUNT ONE
### Conspiracy to Make Conduit Contributions
### (Violation of 18 U.S.C. § 371)

11. The introductory allegations set forth in paragraphs 1 through 10 are realleged and incorporated by reference as though fully set forth herein.

12. From in or about January 2015 through in or about October 2015, in the Eastern District of Virginia and elsewhere, the defendant,

**CHARLES O'NEIL,**

knowingly conspired and agreed with Rogers, Mackenzie, and Person A, and with other persons both known and unknown, to commit offenses against the United States, that is to willfully make contributions in the name of another person and permit one's name to be used to effect such contributions, and cause another to accept contributions made by one person in the name of another person, which contributions aggregated more than $10,000 in calendar year 2015, in violation of 52 U.S.C. §§ 30109(d)(1)(D)(i) and 30122, and 18 U.S.C. § 2.

### Purposes of the Conspiracy

13. The purposes of the conspiracy were to facilitate unlawful campaign contributions from Company A, through O'NEIL, Rogers, Mackenzie, and other individuals, to Committee 1, in order to: evade the prohibition against corporate contributions to Candidate 1's campaign; evade the limits placed on money that individuals could contribute to Candidate 1's campaign; and

3

disguise the fact that Company A was the true source of the funds and that Person A was involved in transferring the funds.

14. It was a purpose of the conspiracy to cause Committee 1 to unwittingly file false campaign finance reports concealing these unlawful campaign contributions from the FEC and the public by falsely stating that the contributions were made by O'NEIL, Rogers, Mackenzie, and others when in reality they were funded by Company A and at the direction of Person A.

### Manner and Means

15. The manner and means of the conspiracy included, but were not limited to, the following:

   a. The conspirators caused more than $15,000 in contributions to Committee 1, all funded with monies from Company A funneled by Person A to O'NEIL, Rogers, Mackenzie, and others for contribution.

   b. The defendant and his coconspirators, at the direction of Rogers, involved at least eight individuals ("the conduits"), and persuaded them to transfer money, usually by writing checks in their own names, and in the amount of $2,700, to Committee 1. O'NEIL, Rogers, and Mackenzie also served as conduits themselves.

   c. As part of the conspiracy, O'NEIL, Rogers, Person A, and others conspired to, and did in fact, reimburse all of the conduits for the amounts they contributed to Committee 1 using money provided by Company A.

   d. To conceal the conspiracy, O'NEIL, Rogers, and Person A caused fake invoices to be sent to Company A. This provided cover for Person A to transfer to

4

    O'NEIL, Rogers, and others the amount of money necessary to cover the contributions by the conduits. O'NEIL, Rogers, Person A, and others, intended for these invoices to conceal the fact that the payments from Company A were, in truth and in fact, reimbursements of the funds that the conduits transferred to Candidate 1's campaign in their own names, rather than reimbursements for the services indicated in the fake invoices.

  e. Pursuant to the fake invoices, in or around May 2015, Person A transferred funds from Company A to bank accounts that were associated with Strategic Campaign Group, Inc. ("SCG Bank Accounts"). O'NEIL, Rogers, Person A, and others used more than $15,000 of the funds transferred from Company A to SCG Bank Accounts to reimburse individual conduits who, in the aggregate, had contributed more than $15,000 to Committee 1.

  f. Because the defendant knowingly and willfully caused contributions to Committee 1 to be made in the conduits' names, when in reality the defendant knew that the true source of the contributions was Company A, the defendant knowingly and willfully caused Committee 1 to file false reports with the FEC that indicated the contributions came from the conduits. Indeed, on November 18, 2015, Committee 1 electronically filed a report with the FEC that listed the conduits as contributors.

### Overt Acts

16.   In furtherance of the conspiracy, and to accomplish its purpose, O'NEIL, at the

5

direction of Rogers, and others known and unknown, committed, and caused to be committed, in the Eastern District of Virginia and elsewhere, the following overt acts:

a. On or about September 9, 2015, O'NEIL wrote a check, drawn on an SCG Bank Account, transferring $3,000 to Mackenzie, purportedly for "Consulting." On or about September 10, 2015, Mackenzie wrote a check, drawn on a Wells Fargo bank account in Alexandria, VA, transferring $2,700 to Committee 1.

b. On or about September 24, 2015, O'NEIL purchased a cashier's check, drawn on an SCG Bank Account, transferring $2,785 to Conduit A, who was the defendant's girlfriend at the time. On or about September 28, 2015, Conduit A wrote a check transferring $2,700 to Committee 1. O'NEIL directed Conduit A to write the check.

c. On or about September 15, 2015, O'NEIL purchased a cashier's check, drawn on an SCG Bank Account, transferring $2,775 to himself. On or about September 28, 2015, O'NEIL wrote a check transferring $2,700 to Committee 1.

d. On or about September 24, 2015, O'NEIL purchased a cashier's check, drawn on an SCG Bank Account, transferring $2,755 to Conduit B. On or about September 28, 2015, Conduit B wrote a check transferring $2,700 to Committee 1.

e. On or about September 3, 2015, O'NEIL wrote a check, drawn on an SCG Bank Account, transferring $5,750 to Conduit C, purportedly for "Consulting." On or about September 23, Conduit C wrote a check transferring $2,700 to

6

Committee 1. The same day, Conduit D, Conduit C's wife, also wrote a check transferring $2,700 to Committee 1.

All in violation of Title 18, United States Code, Section 371.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: *Kimberly R. Pedersen*
Kimberly R. Pedersen
Assistant United States Attorney

Corey R. Amundson
Chief
Public Integrity Section

By: *[signature]*
William J. Gullotta
John P. Taddei
Trial Attorneys