IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES O'NEIL,<br><br>Defendant. | Case No. 1:20-CR-00010-LO |

STATEMENT OF FACTS

The United States and the defendant, CHARLES O'NEIL (hereinafter, O'NEIL or "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1.  From in or about January 2015 through in or about October 2015, in the Eastern District of Virginia and elsewhere, the defendant knowingly conspired and agreed with other persons both known and unknown, including Kelley Rogers and Scott B. Mackenzie, to commit offenses against the United States, that is to willfully make federal campaign contributions in the name of another person and permit one's name to be used to effect such contributions, and cause another to accept contributions made by one person in the name of another person, which contributions aggregated more than $10,000 in calendar year 2015.

2.  The defendant was Vice President of Strategic Campaign Group, Inc., a political consulting company located in Arlington, Virginia. Rogers was President of Strategic Campaign Group, Inc. Mackenzie, a resident of Arlington, Virginia, was a business associate of O'NEIL and Rogers. Documents submitted to the Federal Election Commission ("FEC") identify Mackenzie as the treasurer for approximately fifty-two (52) separate Political Action Committees.

1

3. Candidate 1 was a candidate for an Indiana seat in the United States House of Representatives in the year 2015. Committee 1 was the official federal campaign committee formed to receive campaign contributions for the election of Candidate 1.

4. Person A was the vice president and general counsel of Company A, a gaming corporation formed in Delaware and based in Indianapolis, IN.

5. The defendant and his coconspirators facilitated unlawful campaign contributions from Company A, through O'NEIL, Rogers, Mackenzie, and other individuals, to Committee 1, in order to: evade the prohibition against corporate contributions to Candidate 1's campaign; evade the limits placed on money that individuals could contribute to Candidate 1's campaign; and disguise the fact that Company A was the true source of the funds and that Person A was involved in transferring the funds.

6. The defendant and his coconspirators involved at least eight individuals ("the conduits") and, at the direction of Rogers, persuaded them to transfer money, usually by writing checks in their own names, and in the amount of $2,700, to Committee 1. O'NEIL, Rogers, and Mackenzie also served as conduits themselves. The conspirators caused more than $15,000 in contributions to Committee 1, all funded with monies from Company A funneled by Person A to O'NEIL, Rogers, Mackenzie, and others for contribution.

7. As part of the conspiracy, O'NEIL, Rogers, Person A, and others conspired to, and did in fact, reimburse all of the conduits for the amounts they contributed to Committee 1 using money from Company A and transferred by Person A.

8. To facilitate and conceal the conspiracy, O'NEIL, at the direction of Rogers, Rogers, and Person A manufactured at least two fake contracts for services and caused two fake invoices to be sent to Company A. One of the contracts for services, dated May 1, 2015, and

signed by Rogers and Person A, claimed that a company called Campaign Communications, Inc. would provide Company A with services related to U.S. presidential campaigns and campaign finance law. Company A would pay Campaign Communications, Inc. a "service fee" of $38,500. On or about May 1, 2015, Campaign Communications, Inc. issued an invoice to Company A that claimed that Company A was paying Campaign Communications, Inc. $38,500 for "2015 Presidential Primary/Caucus Monitoring & Report on Activities Related to the 2016 Presidential Election." On or about May 13, 2015, Company A issued a check to Campaign Communications, Inc. in the amount of $38,500.

9. O'NEIL was the sole signatory for Strategic Campaign Group, Inc. DBA Campaign Communications, Inc.'s bank account. Rogers owned and controlled Strategic Campaign Group, Inc. Strategic Campaign Group, Inc. owned Campaign Communications, Inc. During the period of time relevant to the Information, O'NEIL, at the direction of Rogers, and Rogers used the Campaign Communications, Inc. bank account to further the conspiracy involving Company A.

10. The false contracts for services and false invoices provided cover for Person A to transfer to O'NEIL, Rogers, Mackenzie, and others the amount of money necessary to cover the contributions by the conduits. O'NEIL, Rogers, Person A, and others, intended for these invoices to conceal the fact that the payments from Company A were, in truth and in fact, reimbursements of the funds that the conduits transferred to Candidate 1's campaign in their own names, rather than reimbursements for the services indicated in the fake invoices.

11. Pursuant to the fake invoices, in or around May 2015, Person A transferred funds from Company A to bank accounts that were associated with Strategic Campaign Group, Inc. and Campaign Communications, Inc. ("SCG Bank Accounts"). O'NEIL, Rogers, Person A, and others used more than $15,000 of the funds transferred from Company A to SCG Bank Accounts

to reimburse individual conduits who, in the aggregate, contributed more than $15,000 to Committee 1.

12. In furtherance of the conspiracy, and to accomplish its purpose, O'NEIL, at the direction of Rogers, and others known and unknown, committed, and caused to be committed, in the Eastern District of Virginia and elsewhere, the following acts:

   a. On or about September 9, 2015, O'NEIL wrote a check, drawn on an SCG Bank Account, transferring $3,000 to Mackenzie, purportedly for "Consulting." On or about September 10, 2015, Mackenzie wrote a check, drawn on a Wells Fargo bank account in Alexandria, VA, transferring $2,700 to Committee 1.

   b. On or about September 24, 2015, O'NEIL purchased a cashier's check, drawn on an SCG Bank Account, transferring $2,785 to Conduit A, who was the defendant's girlfriend at the time. On or about September 28, 2015, Conduit A wrote a check transferring $2,700 to Committee 1. O'NEIL directed Conduit A to write the check.

   c. On or about September 15, 2015, O'NEIL purchased a cashier's check, drawn on an SCG Bank Account, transferring $2,775 to himself. On or about September 28, 2015, O'NEIL wrote a check transferring $2,700 to Committee 1.

   d. On or about September 24, 2015, O'NEIL purchased a cashier's check, drawn on an SCG Bank Account, transferring $2,755 to Conduit B. On or about September 28, 2015, Conduit B wrote a check transferring $2,700 to Committee 1.

   e. On or about September 3, 2015, O'NEIL wrote a check, drawn on an SCG Bank Account, transferring $5,750 to Conduit C, purportedly for "Consulting." On or about September 23, Conduit C wrote a check transferring $2,700 to Committee 1.

The same day, Conduit D, Conduit C's wife, also wrote a check transferring $2,700 to Committee 1.

13. Because the defendant knowingly and willfully caused contributions to Committee 1 to be made in the conduits' names, when in reality the defendant knew that the true source of the contributions was Company A, the defendant knowingly and willfully caused Committee 1 to file false reports with the FEC that indicated the contributions came from the conduits. Indeed, on or about November 18, 2015, Committee 1 electronically filed a report with the FEC that listed the conduits as contributors.

14. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

15. The actions of the defendant, as recounted above, were in all respects knowing, willful, and deliberate, with specific intent to violate the law, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: 1/23/2020

By: *Kimberly R. Pedersen*
Kimberly R. Pedersen
Assistant United States Attorney

Corey R. Amundson
Chief
Public Integrity Section

By: _____
William J. Gullotta
John P. Taddei
Trial Attorneys

6

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, CHARLES O'NEIL, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
CHARLES O'NEIL

I am Steven McCool, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Steven McCool, Esq.
Attorney for CHARLES O'NEIL